JODI LINKER
Federal Public Defender
Northern District of California
ANA BOTELLO
Assistant Federal Public Defender
19th Floor Federal Building, Rm 19-6884
450 Golden Gate Ave.
San Francisco, CA 94612
Telephone: (415) 436 7700
Facsimile: (415) 436 7706
Email: Ana_Botello@fd.org

Counsel for Defendant Wilson Acosta-Zuniga

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 25–165 JD |
| Plaintiff, | **WILSON ACOSTA-ZUNIGA'S SENTENCING MEMORANDUM** |
| v. | Hearing Date: October 6, 2025 |
| WILSON ACOSTA-ZUNIGA, | Hearing Time: 10:30 a.m. |
| Defendant. | |

**INTRODUCTION**

Defendant, Wilson Acosta-Zuniga, a fifty-four year old man on the verge of homelessness, was trying to save just eight hundred dollars more before he self-deported to Honduras when he was arrested on the instant offenses of drug sales and illegal reentry of a deported alien. The parties are jointly requesting a sentence of 18 months in this case, pursuant to a plea agreement. That request is supported by Mr. Acosta-Zuniga's immediate acceptance of responsibility and his individual history and characteristics, including dated criminal history. The parties' jointly request is that this Court accept the Rule 11(c)(1)(C) plea agreement.

**GUIDELINES CALCULATION**

The parties agreed on the applicable Sentencing Guidelines as part of the plea agreement and are in agreement with the US Probation Officer's presentence report (PSR) calculations. Mr. Acosta-Zuniga is in Criminal History Category III. The combined offense level is 24. Mr. Acosta-Zuniga is entitled to a three-point adjustment for acceptance of responsibility as he immediately accepted responsibility for both the drug sales offense and another federal immigration charge. The adjusted offense level is 21. The advisory Guideline range, therefore, is 46-57 months.[1] As noted *supra*, this is a case where, per the plea agreement, the parties are requesting a variance from the advisory Sentencing Guidelines to a sentence of 18 months.

Although not reflected in the PSR, Mr. Acosta-Zuniga is also eligible for a 2-point downward variance under the proposed amendment to United States Sentencing Guidelines §2D1.1(e)(2)(B), which expands eligibility for a mitigating role reduction under §3B1.2. That amendment goes into effect on November 1, 2025—within 30 days of Mr. Acosta-Zuniga's sentencing date. This new amendment instructs that an adjustment under §3B1.2(b) is "generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit." *See* U.S. Sentencing Commission, *Amendments to the Sentencing Guidelines* (April 30, 2025), at 14.[2] Mr. Acosta-Zuniga's conduct falls squarely within that description. He sold only user-level quantities of drugs and received very little compensation – he was found with just $340.37 dollars.

The new amendments are not effective until November 1, 2025, but many courts grant these anticipated reductions as variances to avoid backlogs. Mr. Acosta-Zuniga qualifies for this additional 2-point downward variance in light of the proposed amendment. Such variance would

---

[1] The drug Guidelines which apply here are not empirically based. *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) ("The Commission did not use this empirical approach [used in developing Guidelines for non-drug sentences] for drug-trafficking offenses."). This, along with Mr. Acosta-Zuniga's history and characteristics under 18 U.S.C. 3553(a), supports a variance to the time-served and one day sentencing request here.

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202505_RF.pdf (last accessed September 22, 2025).

make his advisory Guideline range 37-46 months. Again, as noted *supra*, this is a case where, per the plea agreement, the parties are jointly requesting a further variance from the advisory Sentencing Guidelines to a sentence of 18 months based on individual history and characteristics, and to avoid sentencing disparities amongst similarly-situated defendants.

## MR. ACOSTA-ZUNIGA'S HISTORY AND CHARACTERISTICS

Mr. Acosta-Zuniga is the second of six children born to an extremely poor family in Honduras. PSR at ¶50. He recalls having no electricity or running water in his home growing up. PSR at ¶52. Mr. Acosta-Zuniga's parents had no money to buy him or his siblings shoes. *Id.* There was barely enough food for them to feed themselves because they grew the food they ate themselves. *Id.* At age eight, Mr. Acosta-Zuniga stopped attending elementary school to help his father sustenance farm. *Id.* The lack of resources and educational opportunities of his youth have continued throughout his life, and impacted all of the family. To wit, both of Mr. Acosta-Zuniga's parents are deceased having succumbed to diseases impacting their digestive systems.

Mr. Acosta-Zuniga first came to the United States in hopes of changing his economic circumstances in his early twenties. Unfortunately, Mr. Acosta-Zuniga was convicted of selling drugs in San Francisco, CA and Portland, OR, and of possessing a forged instrument (false documents to work legal jobs) in New York state such that Mr. Acosta-Zuniga would never live the American Dream. He was later convicted of the federal offense of Illegal Reentry after Deportation before his 30th birthday. Although he had received relatively short and probationary sentences for his state charges, Mr. Acosta-Zuniga received a sentence of 30 months for his first federal offense in 2002. At the time, the Illegal Reentry Guidelines carried a significant 16+ level enhancement for individuals who had committed "aggravated felonies," a term of law that refers, inter alia, to drug sales and fraud offenses. **The 30-month sentence imposed deterred Mr. Acosta-Zuniga from any criminal conduct for over six years.** From 2003 when he was deported until 2009 when he was rearrested, Mr. Acosta-Zuniga remained in Honduras.

For his 2009 Illegal Reentry conviction, Mr. Acosta-Zuniga received a 24-month sentence. Although this was the same offense for which he had received 30 months previously, his guidelines were *lower* because his 1995 and 1996 drug sale offenses no longer accrued criminal

history category category points. **<u>Again, Mr. Acosta-Zuniga's sentence of 24-months deterred him from returning to the United States for nearly a decade</u>**. From 2011 when he was again deported until 2021 when Mr. Acosta-Zuniga attempted his return to the United States, he remained in Honduras. This time (2021), the only reason for which he returned was because his son passed away unexpectedly from a motorcycle accident leaving Mr. Acosta-Zuniga with funeral expenses to pay and less income coming into the family home following his son's death.

On his way to the United States from Honduras in 2021, Mr. Acosta-Zuniga had to make stops along several countries. While in Mexico, Mr. Acosta-Zuniga was assaulted by individuals who targeted migrants to steal their money. When Mr. Acosta-Zuniga informed them that he had no money to give them, these individuals beat him with a baseball bat causing injuries so severe that Mr. Acosta-Zuniga was admitted to hospital in Mexico for two days until he was cleared for release. Having made it so close, Mr. Acosta-Zuniga decided to complete his journey to America, but vowed never to make the journey again. He felt older, and defeated—both in body and spirit.

Once in the United States, Mr. Acosta-Zuniga attempted to live a law-abiding life despite his lack of immigration status. He worked odd jobs around Oakland, including working at a liquor store where he stocked shelves earning just enough money to get by. He was making only about $1,200 per month. Mr. Acosta-Zuniga's plans in returning to the United States were to send money to his wife, daughters and grandchildren back in Honduras; what he found was that he could barely make ends meet for himself. He was sharing a home other men, which reduced his rent costs, but sometimes he had to resort to soup kitchens to feed himself.

After he was laid off at his job from the liquor store, he worked in landscaping and construction jobs that would often lay him off first whenever work slowed. Increasingly, Mr. Acosta-Zuniga was finding it difficult to find work as a man in his early 50s, especially with residual pain from the beating that had occurred in Mexico. Unfortunately, Mr. Acosta-Zuniga resorted to the same thing he had done in his 20's, he sold drugs on the streets to make ends meet.

After he was released from San Francisco County Jail in August of 2024, his goal was to save just enough money to be able to purchase his transportation back to Honduras. He only needed $800 more when he was arrested again for selling $20 worth of drugs to an undercover

officer in the instant offense. Ashamed—he immediately accepted responsibility for his actions. He respectfully recommends a sentence of 18 months which will be followed by deportation.

As this Court is well aware, consideration of the advisory sentencing range, the nature and circumstances of the offense, the history and characteristics of Mr. Acosta-Zuniga, and the need to avoid unwarranted sentencing disparities among similarly situated individuals are all important parts of sentencing. 18 U.S.C. § 3553(a)(1), (a)(4), (a)(6). Mr. Acosta-Zuniga's individual history and characteristics, detailed *infra*, along with the sentences of similarly-situated defendants (time served/about three months for same offenses without criminal history) are what make the jointly-requested sentence of 18 months appropriate here.

The factors detailed in § 3553(a) assist courts in fulfilling the mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). "The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary,'" to serve the statutory purposes of sentencing. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting § 3553(a)). And Mr. Acosta-Zuniga, like every other person who comes before this Court for sentencing, is "a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) (quotations omitted)). The statutory principles and relevant § 3553(a) factors as they apply to Mr. Acosta-Zuniga all support the parties' sentencing recommendation here.

## SIMILARY-SITUATED DEFENDANTS

Although the parties' joint recommendation is a significant variance from the guidelines, Mr. Acosta-Zuniga's recommended sentence is in line with sentences imposed on similarly-situated defendants who have committed drug trafficking and immigration offenses in this district and throughout the country. The United States Sentencing Commission publishes quarterly reports of those sentenced in federal courts. In their latest report, which includes data from

October 1, 2024 to March 31, 2025,³ the mean and median sentences (in months) for immigration offense were 11 months and six months respectively. *See below* Table 6: Sentence Length by Type of Crime from the latest USSC Quarterly Data Report.

**Table 6**

**SENTENCE LENGTH BY TYPE OF CRIME**[1]

2nd Quarter 2025 Preliminary Cumulative Data (October 1, 2024, through March 31, 2025)

| TYPE OF CRIME | Mean Months | Median Months | N |
|---|---|---|---|
| TOTAL | 51 | 24 | 30,526 |
| Administration of Justice | 15 | 10 | 294 |
| Antitrust | 13 | 6 | 6 |
| Arson | 63 | 60 | 44 |
| Assault | 76 | 46 | 419 |
| Bribery/Corruption | 19 | 9 | 173 |
| Burglary/Trespass | 16 | 2 | 22 |
| Child Pornography | 116 | 97 | 694 |
| Commercialized Vice | 10 | 3 | 42 |
| Drug Possession | 1 | 0 | 34 |
| Drug Trafficking | 86 | 70 | 8,068 |
| Environmental | 4 | 0 | 73 |
| Extortion/Racketeering | 45 | 36 | 35 |
| Firearms | 50 | 41 | 3,923 |
| Food and Drug | 6 | 0 | 19 |
| Forgery/Counter/Copyright | 19 | 12 | 46 |
| Fraud/Theft/Embezzlement | 23 | 12 | 2,535 |
| Immigration | 11 | 6 | 10,605 |
| Individual Rights | 45 | 12 | 33 |
| Kidnapping | 202 | 180 | 67 |

For drug trafficking offenses, the mean and median months were 86 and 70 months. *Id.* Mr. Acosta-Zuniga's guideline numbers are not as high as those mean and median numbers for his drug offense. However, this Court should note that the average of all defendants that have

---

³ The report is available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_2nd_FY25.pdf (last accessed September 22, 2025).

DEFENSE SENTENCING MEMORANDUM
*ACOSTA-ZUNIGA*, CR 25–165 JD

been sentenced for drug trafficking charges in the past five years have received average sentences that are lower than the average guideline minimum. *See:* Exhibit 2: Figure 10: Sentence Length and Guideline Minimum Quarterly Data for Individuals Sentenced Under §2D1.1 (Unlawful Drug Trafficking or Manufacturing; the average drug sentence is not a guideline sentence.



Figure 10
SENTENCE LENGTH AND GUIDELINE MINIMUM QUARTERLY DATA
FOR INDIVIDUALS SENTENCED UNDER §2D1.1 (UNLAWFUL DRUG TRAFFICKING OR MANUFACTURING)[1]
Fiscal Years 2020 - 2024,
2nd Quarter 2025 Preliminary Cumulative Data (October 1, 2024, through March 31, 2025)

[1] Figure includes only cases with a primary sentencing guideline of USSG §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy). Cases with guideline minimums of life or probation were included in the guideline minimum average computations as 470 months and zero months, respectively. Cases with sentences of 470 months or greater (including life) or probation were included in the sentence average computations as 470 months and zero months, respectively. The information presented in this figure includes conditions of confinement as described in USSG §5C1.1. Guideline minimums account for applicable statutory mandatory penalties. Descriptions of variables used in this figure are provided in Appendix A.

SOURCE: U.S. Sentencing Commission, 2020 - 2024 Datafiles, USSCFY20 - USSCFY24, and Preliminary Data from USSCFY25 (October 1, 2024, through March 31, 2025).

There is an understanding that the drug guidelines are not empirically based and are often greater than necessary to achieve the goals of sentencing. In this case, the parties reached the proposed 18 month disposition taking into account Mr. Acosta-Zuniga's immediate acceptance of responsibility, his age and life circumstances (selling drugs to avoid homelessness before returning to Honduras), his past criminal history including the fact his past sentences deterred recidivism, and the fact that this district and many other districts along the border have robust Fast Track programs for drug and immigration offenses that grant individuals significant reductions from their guidelines sentences in exchange for prompt acceptance of responsibility and an understanding that they will be deported after they serve their sentence.

For all of these reasons, the parties respectfully pray that the Court will accept the C plea and grant Mr. Acosta-Zuniga a sentence of 18 months in custody which will be followed by his eventual deportation to Honduras. Based on his age and the circumstances of his last return, the parties are confident Mr. Acosta-Zuniga will not return to the United States at any point in his future.

## CONCLUSION

The jointly-requested sentence here is appropriate in light of Mr. Acosta-Zuniga's difficult background, lack of criminal history, sincere remorse, and plans for the future. It is also appropriate to avoid unwarranted disparities between similarly-situated individuals who have received similar sentences. For the foregoing reasons, the defense respectfully requests that this Court accept the plea agreement and grant the parties' jointly-requested sentence of 18 months, because it is sufficient, but no greater than necessary, to serve the statutory purposes of sentencing for Mr. Acosta-Zuniga.

Dated:   August 11, 2025               Respectfully submitted,

                                       JODI LINKER
                                       Federal Public Defender
                                       Northern District of California

                                                /S
                                       _____
                                       ANA BOTELLO
                                       Assistant Federal Public Defender